UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**UNITED STATES OF AMERICA**,

      Plaintiff,

      v.                               No. **CR 04-1348 MCA**

**GILBERT HERRERA**,

      Defendant.


**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendant Gilbert Herrera's *Motion for New Trial* [Doc. No. 71] filed on March 17, 2005. Having reviewed the parties' submissions, the relevant law, and being fully advised in the premises, the Court denies Defendant Herrera's motion for the reasons set forth below.

**I.**     **BACKGROUND**

After a three and one-half day trial concluding on the afternoon of November 15, 2004, a jury found Defendant Gilbert Herrera guilty of one count of conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine as charged in the Indictment. [Doc. No. 60.] On March 17, 2005, Defendant Herrera moved for a new trial. Defendant's motion asserts that he is entitled to a new trial because he was not competent at the trial due to physical illness or injuries he suffered during that trial. [Doc. No. 71.]

In support of this assertion, Defendant has submitted a summary of his medical records and his own affidavit dated March 16, 2005. [Ex. A, B to Doc. No. 71.] These documents indicate that Defendant Herrera made a number of medical complaints to health-care providers at the detention facility following his arrest on August 19, 2004. The summary of his medical records from that date until September 7, 2004, indicates that Defendant Herrera had complained of heartburn, lower back pain, and a foot wound. He was given a pain reliever (Ibuprofen) for the back pain, an antiobiotic (Keflex) for a skin infection on his foot, and an anti-fungal cream (Tolnaftate) to resolve his complaint of itching, peeling, and cracking skin on his feet. The summary of his medical records for September 7, 2004, indicates that the foot wound had healed as of that date.

No further medical complaints are documented in the summary until October 14, 2004, at which time Defendant Herrera requested inserts for his shoes based on a complaint of foot pain. The next entry is for October 30, 2004, at which time Defendant Herrera complained of a "bad rash" on his legs, for which he was given an anti-fungal cream (Tolnaftate) on November 3, 2004.

The next entry on the summary is for a "Sick Call Record" dated November 14, 2004, at which time Defendant Herrera complained that:

> I seen the Doctor for a boil, s[h]e gave me some cream that made it worse and now I am bleeding all over the place. I need to be seen ASAP. I will be in trial tomorrow on 11/15/04. And I will advise my lawyer, Robert Gorence, about this problem. I am in Bad Pain. I need to be seen when I get back.

[Ex. A to Doc. No. 71, at 3.] None of the foregoing complaints were brought to the attention of the Court at trial on November 15, 2004, nor did the Court observe any signs that

2

Defendant was bleeding or in "bad pain" or experiencing any kind of distress during the trial. The summary of his medical records indicates that he was seen by medical personnel at the detention facility on November 16, 2004, the day after the trial concluded. The medical personnel noted Defendant Herrera's complaint of "red spots on arms and buttocks" and observed that the skin on his left forearm and buttocks was "red, swollen and tender." He was given an antibiotic (Keflex) for a skin infection (identified as a type of "cellulitus").

The summary of medical records also indicates that November 16, 2004, or the day after, was the first time a physician at the detention facility formally diagnosed Defendant Herrera as a diabetic and prescribed medication (Metformin) as well as a diabetic diet to control his blood-glucose levels. Before that date, the summary indicates that medical personnel at the detention facility had begun to administer tests for determining Defendant Herrera's blood-glucose levels, and diabetes was listed as a potential diagnosis. However, the summary indicates that the physician's actual diagnosis and treatment of Defendant Herrera's diabetes did not occur until after the conclusion of the trial on November 15, 2004. The medical records referenced in the summary contain no opinions concerning the causal relationship, if any, between Defendant Herrera's diabetes and his other medical complaints, or his competency to stand trial.

Defendant Herrera's affidavit dated March 16, 2004, also refers to feeling "faint, nauseous, and for the most part delirious" during his "entire trial." [Ex. B to Doc. No. 71.] Such additional complaints referenced in his affidavit are not reflected in the summary of his medical records, nor were they brought to the Court's attention at any time during the trial.

After the Government filed its response to Defendant Herrera's motion [Doc. No. 77], Defendant Herrera moved for an extension of time to file a reply brief and announced his intention to attach additional evidence to his reply brief. [Doc. No. 79.] I granted that motion and also allowed the Government to file a surreply in the event that Defendant Herrera attached new evidence to his reply brief. [Doc. No. 80.]

On May 3, 2005, Defendant Herrera filed his reply brief, along with the affidavit of his counsel, Robert Gorence, and the *curriculum vitae* of a physician, Dr. David Goldstein. [Doc. No. 82.] The affidavit states that Defendant Herrera reported various complaints about his health to his counsel before and during trial, and that Defendant Herrera appeared "lackadaisical and different in affect during the trial." The affidavit further states that, after speaking with Dr. Goldstein, defense counsel formed the opinion that Defendant Herrera was not capable of assisting counsel effectively during the trial because of "the difference in his cognitive functioning." [Ex. A to Doc. No. 82.]

Dr. Goldstein's *curriculum vitae* indicates that he is board-certified in pulmonary medicine and internal medicine. [Ex. B to Doc. No. 82.] There is no indication that the focus of Dr. Goldstein's medical expertise involves diabetes, its causal relationship with cognitive functioning, or the procedures involved in evaluating whether a criminal defendant is competent to stand trial. Indeed, Defendant Herrera's reply brief indicates that Dr. Goldstein has not personally examined Defendant Herrera, but intends to present testimony based solely on a review of his medical records. [Doc. No. 82.]

The health complaints referenced in defense counsel's affidavit were not reported to

the Court before or during the trial. In addtion, the Court did not observe any behavior consistent with an impairment in Defendant Herrera's cognitive functioning while in the courtroom, nor is such impairment reported in the summary of medical records attached to Defendant Herrera's motion.

## II.   ANALYSIS

District courts are generally required to order a competency hearing

> [a]t any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant . . . if there is reasonable cause to believe that the defendant may *presently* be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

18 U.S.C. § 4241(a) (emphasis added). Although Defendant Herrera has not yet been sentenced in this case, his motion papers and affidavit do not seek a hearing pursuant to 18 U.S.C. § 4241(a) regarding his competency to proceed with sentencing at the present time.[1] Rather, Defendant Herrera filed his motion pursuant to Fed. R. Crim. P. 33, and his motion retrospectively challenges his competency at the time of his trial in November 2004 based on the alleged discovery of new evidence concerning his medical condition.

Fed. R. Crim. P. 33 authorizes a district court to grant a new trial "if the interest of justice so requires." The Tenth Circuit has stated, however, that "[a] motion for a new trial is not viewed with favor and should be granted with great caution." United States v. Miller,

---

[1] Defendant Herrera's sentencing hearing has been continued pending the resolution of his motion for a new trial. [Doc. No. 63, 64.] In the event that he or his counsel wish to challenge his competency to proceed with the sentencing hearing, they may file a separate motion pursuant to 18 U.S.C. § 4241(a).

987 F.2d 1462, 1466 (10th Cir. 1993). Retrospective competency determinations also are generally disfavored. See McGregor v. Gibson, 248 F.3d 946, 962 (10th Cir. 2001) (en banc).

Under Rule 33(b), a "motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty," and a "motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty or within such further time as the court sets during the 7-day period." Fed. R. Crim. P. 33(b); see United States v. Higgins, 282 F.3d 1261, 1278 (10th Cir. 2002). This Court does not have the power to grant motions for a new trial that are filed after the time limits stated in Fed. R. Crim. P. 33(b). See United States v. Miller, 869 F.2d 1418, 1420 (10th Cir. 1989) (collecting cases).

Excluding intermediate Saturdays and Sundays pursuant to Fed. R. Crim. P. 45(a), Defendant Herrera's motion for a new trial was not filed until more than seven days after the jury returned its verdict. I did not extend the time for filing new-trial motions during the seven-day period after the jury's verdict in this case. Accordingly, Defendant Herrera's motion is untimely insofar as it is based on any reason other than newly discovered evidence. This Court no longer has jurisdiction to grant Defendant Herrera a new trial for such other reasons. See United States v. Quintanilla, 193 F.3d 1139, 1148 (10th Cir. 1999) (citing Miller, 869 F.2d at 1420).

I may still consider Defendant Herrera's motion, however, insofar as it is based on newly discovered evidence. In order to obtain a new trial on this basis, a defendant in a

criminal case generally must show that:

> (1) the evidence was discovered after trial, (2) the failure to learn of the evidence was not caused by h[is] own lack of diligence, (3) the new evidence is not merely impeaching, (4) the new evidence is material to the principal issues involved, and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

Higgins, 282 F.3d at 1278 (internal quotation marks omitted). These factors must be modified, of course, "where the newly discovered evidence pertains not to the defendant's guilt, but to his competency to stand trial." United States v. McCarthy, 54 F.3d 51, 55 (2d Cir. 1995).

"The criminal trial of an incompetent defendant violates due process" guaranteed by the United States Constitution. McGregor, 248 F.3d at 951. The Due Process Clause also requires district courts to hold an adequate competency hearing whenever evidence raises a sufficient doubt about the mental competency of an accused to stand trial. See id. at 952. Accordingly, the question presented here is not whether the alleged newly discovered evidence would probably produce an acquittal, but whether this evidence would mean that the trial resulting in Defendant Herrera's conviction probably violated due process, either in a substantive sense because Defendant Herrera was not in fact competent, or in a procedural sense because the Court failed to conduct an adequate competency hearing.

In this context, the term "competency" refers to "'whether [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him.'" Id. (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)).

7

In order to obtain post-conviction relief on a substantive competency claim, Defendant Herrera "must demonstrate by 'clear and convincing evidence' a 'real, substantial and legitimate doubt' as to his competence to stand trial." Rogers v. Gibson, 173 F.3d 1278, 91 (10th Cir. 1999) (quoting Walker v. Att'y Gen., 167 F.3d 1339, 1343 (10th Cir. 1999)). A defendant "is entitled to a *nunc pro tunc* evidentiary hearing to establish that he was incompetent at the time of trial only upon raising a threshold doubt about his competency by clear and convincing evidence." Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999). In order to raise such doubt, the defendant "must present facts sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt concerning his mental capacity." Nguyen v. Reynolds, 131 F.3d 1340, 1346 (10th Cir. 1997) (citations and internal quotation marks omitted).

In a related context addressing a habeas corpus petition, the Tenth Circuit has held that "an individual raising a procedural competency claim is held to a lower burden of proof than one raising a substantive competency claim." McGregor, 248 F.3d at 952. "To prevail on a procedural competency claim [the defendant] need not establish facts sufficient to show he was actually incompetent or to show he was incompetent by a preponderance of the evidence." Id. at 954. Rather, Defendant must show "that a reasonable judge should have doubted whether [he] had 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and whether [he] had 'a rational as well as factual understanding of the proceedings against him.'" Id. (quoting Dusky, 362 U.S. at 402.) Although commonly referenced as a "*bona fide* doubt," this standard requires the

8

Court to "view the evidence in the record objectively, from the standpoint of a reasonable judge presiding over [defendant's] case at the time of trial." Id.

This approach to evaluating post-conviction competency claims is consistent with the general rule that the trial judge who presided over the trial and is familiar with the record may decide whether to grant or deny a new trial without conducting an additional evidentiary hearing. See United States v. Pearl, 324 F.3d 1210, 1215 (10th Cir. 2003); United States v. Sutton, 767 F.2d 726, 729-30 (10th Cir. 1985); United States v. Dogskin, 265 F.3d 682, 687 (8th Cir. 2001); United States v. MMR Corp., 954 F.2d 1040, 1046 (5th Cir. 1992) (collecting cases). In order to establish an exception to this general rule, "the party seeking a hearing must make 'a sufficient threshold showing that material facts [are] in doubt or dispute.'" United States v. Alicea, 205 F.3d 480, 487 (1st Cir. 2000) (quoting United States v. Panitz, 907 F.2d 1267, 1273 (1st Cir.1990)).

Under the circumstances presented here, this requirement of a "sufficient threshold showing" is consistent with the "*bona fide* doubt" standard that a defendant is required to meet in order to establish a post-conviction procedural competency claim. Thus, Defendant Herrera would be entitled to an evidentiary hearing on his motion for a new trial if his motion papers raise a *bona fide* doubt about whether he was competent at the time of trial.

Factors to be considered in determining whether there are sufficient grounds for a *bona fide* doubt about Defendant's competency include evidence of "irrational behavior," "demeanor at trial," "any prior medical opinion on competence to stand trial," "mental illness," and "any representations of defense counsel about the defendant's incompetence."

9

McGregor, 248 F.3d at 954-55 (citations and internal quotation marks omitted). While it is possible for even one of these factors standing alone to raise a *bona fide* doubt about a defendant's competency in certain circumstances, the Court must examine the totality of the circumstances: "all evidence should be considered together, no single factor stands alone." Id. at 955 (citations and internal quotation marks omitted).

In this case, neither Defendant Herrera nor his counsel made any representations or submitted any medical opinions to the Court concerning the issue of competency before or during his trial. The record reflects that Defendant Herrera was indicted on July 14, 2004, and arrested on August 19, 2004. [Doc. No. 1, 2, 15.] He did not raise the issue of competency or request a psychiatric examination at his arraignment [Doc. No. 10], in his motion to reconsider conditions of release [Doc. No. 19], or in any other pretrial motions. Defendant Herrera specifically asserted his right to a speedy trial and did not seek a continuance of the November 9, 2004, trial date. [Doc. No. 35.] The issue of Defendant Herrera's competency or health concerns also was never raised at any of the pretrial hearings or during the trial. [Doc. No. 51, 56, 57.]

Although neither Defendant Herrera nor his counsel said anything to alert the Court to the issue of competency or health concerns before or during the trial, I also consider whether there was anything about Defendant Herrera's demeanor and non-verbal behavior at trial that should have led me to conduct a competency hearing *sua sponte*. I find that there was nothing unusual about Defendant Herrera's demeanor or behavior in the courtroom that raised a *bona fide* doubt about his competency to stand trial. In particular, I observed no

signs that he was inattentive, bleeding, faint, nauseous, delirious, lackadaisical, or otherwise in distress. He appeared to communicate with his counsel and attend to the proceedings in a normal manner during the entire trial.

While I recognize that trials are stressful events for criminal defendants, I also find that there was nothing unusually strenuous about the manner in which Defendant Herrera's trial was conducted. It is my practice to take breaks at regular intervals during the trial so that defendants have the opportunity to confer with counsel, visit the restroom, and attend to other personal needs outside the presence of the jury. In addition, criminal defendants who are in custody are monitored throughout the trial by representatives of the United States Marshal's Service, who will generally communicate to the Court any special needs or concerns that may arise.

These practices were followed during Defendant Herrera's trial. For example, when defense counsel requested a break during voir dire, I promptly granted that request and excused the panel of prospective jurors from the courtroom. Defendant Herrera also was provided with several days off during the course of the trial due to the closure of the Court on Veteran's Day (November 11, 2004), and the weekend of November 13-14, 2004. The trial was conducted between the hours of 9:00 a.m. and 5:00 p.m., except for the last day (November 15, 2004), when Defendant Herrera's counsel specifically requested to begin earlier. The trial ended at approximately 12:40 p.m. on that date, and the jury returned its verdict at approximately 2:20 p.m. Thus, there was nothing unusual about the length or pace of the trial that would have alerted the Court to the need for a hearing on Defendant

Herrera's competency or health concerns.

In the absence of any events, communications, or behavior bearing on the issue that were brought to the Court's attention before or during the trial, Defendant Herrera relies solely on his own affidavit and the summary of medical records that were presented to the Court for the first time as exhibits to his motion for a new trial filed on March 17, 2005, as well as the affidavit of counsel and the anticipated opinion of Dr. Goldstein referenced in his reply brief filed on May 3, 2005. While the summary of medical records refers to a number of medical complaints, it does not show any history of mental illness or cite any medical opinion concerning his competency to stand trial in November 2004.

Moreover, the documents presented with Defendant Herrera's motion do not offer any explanation as to why Defendant Herrera was unable to communicate his health complaints to his counsel or to the Court before or during the trial if he was truly dissatisfied with the health care he was receiving or unable to proceed with the trial. Indeed, the summary of medical records quotes Defendant Herrera as stating: "I will advise my lawyer, Robert Gorence, about this problem," and the affidavit attached to his reply brief indicates that Defendant Herrera did communicate various health complaints to his counsel before and during trial. [Ex. A to Doc. No. 71, at 3; Ex. A to Doc. No. 82.] Thus, Defendant Herrera has not met his burden of showing that he "discovered" the evidence regarding his medical complaints for the first time after trial.

For purposes of evaluating a motion for a new trial based on allegations of newly discovered evidence, the general rule is that "[w]hether sufficient diligence was used in the

12

investigation will be assessed by reference to the composite knowledge of both the accused and counsel." 5 Wayne R. LaFave *et al.*, Criminal Procedure, § 24.11(d), at 627-28 (2d ed. 1999); see United States v. Blucher, 730 F. Supp. 428, 431-32 (S.D. Fla. 1990) (collecting cases). There may be exceptional circumstances in which this rule does not apply because the same illness or injury which renders a defendant incompetent to stand trial also renders that defendant incapable of communicating his or her medical needs to counsel or to the Court. See, e.g., Johnson v. Norton, 249 F.3d 20, 27-28 (1st Cir. 2001) (nurse reported that defendant with obvious head trauma had "passed into unconsciousness" after jury selection). Absent such exceptional circumstances, however, a defendant cannot claim that evidence is "newly discovered" merely because he or she did not disclose that evidence to his or her counsel at the time of trial. See Blucher, 730 F. Supp. at 431-32.

Here the only "newly discovered" evidence is a physician's diagnosis that Defendant Herrera has a particular type of diabetes. This diagnosis was made only a day or two after the trial, and the alleged symptoms of Defendant Herrera's illness, as well as his other medical complaints, were known to him before or during his trial, at which time he was capable of communicating those complaints and seeking medical attention.

Moreover, it is the symptoms or physical manifestations of the illness, rather than its formal diagnosis by a physician, that forms the basis for Defendant Herrera's competency claim. In other words, Defendant Herrera does not claim that he was incompetent to stand trial simply because a physician subsequently made a formal diagnosis concerning a particular type of diabetes. Rather, his motion for a new trial rests on the contention that he

was not competent to stand trial because of the symptoms or physical manifestations of this or some other physical illness or injury.  Such symptoms or physical manifestations do not qualify as "newly discovered evidence" for purposes of Fed. R. Crim. P. 33.

Considering the totality of the circumstances, I find that the affidavits attached to Defendant Herrera's motion papers are not credible, and that the concerns or symptoms documented in the summary of his medical records do not raise a *bona fide* doubt or support a reasonable inference that he was not competent to stand trial on November 9, 10, 12, and 15, 2004, based on newly discovered evidence.  See United States v. Quintieri, 306 F.3d 1217, 1233-34 (2d Cir. 2002) (defendant's report of feeling "dizzy" and receiving wrong medication did not raise sufficient doubt about his competency when totality of circumstances indicated otherwise).  It follows that this Court lacks jurisdiction over Defendant Herrera's motion because he has failed to meet his burden of showing that the evidence in question was "newly discovered" after trial.  See United States v. Carper, 16 F.3d 417, 1994 WL 38669, at *2 (10th Cir. 1994) (unpublished order and judgment concluding that district court lacked jurisdiction over motion for new trial based on competency claim that was not raised within seven-day limit provided in Fed. R. Crim. P. 33).  For these reasons, Defendant Herrera's motion for a new trial is denied.

My ruling on this motion, of course, does not necessarily preclude Defendant Herrera or his counsel from seeking a determination pursuant to 18 U.S.C. § 4241(a) regarding his competency to proceed with sentencing at the present time.  My ruling on this motion also does not necessarily preclude Defendant Herrera from pursuing any administrative claims

or civil actions with respect to the quality of his medical treatment, or any collateral review of his conviction in a separate proceeding. See Carper, 16 F.3d 417, 1994 WL 38669, at *2.

### III. CONCLUSION

For the foregoing reasons, Defendant Herrera has not established grounds for granting a new trial, nor has he made the threshold showing necessary for establishing this Court's jurisdiction over his motion or conducting an evidentiary hearing on the issues raised therein.

**IT IS, THEREFORE, ORDERED** that Defendant Gilbert Herrera's *Motion for New Trial* [Doc. No. 71] is **DENIED**.

**SO ORDERED** this 20th day of May, 2005, in Albuquerque, New Mexico.

                                                                                     **M. CHRISTINA ARMIJO**
                                                                                     UNITED STATES DISTRICT JUDGE